UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JORGE ARANIVA ALMENDARES,<br>Petitioner,<br>v.<br>JULIO HERNANDEZ et al.,<br>Respondents. | CASE NO. 2:26-cv-03556-TL<br><br>ORDER ON PETITION FOR WRIT OF HABEAS CORPUS |

This matter is before the Court on Petitioner Jorge Araniva Almendares's Petition for Writ of Habeas Corpus. Dkt. No. 1. Respondents[1] are Todd Blanche, Attorney General of the United States; Markwayne Mullin, United States Secretary of Homeland Security; Julio Hernandez, Seattle Acting Field Office Director, Enforcement and Removal Operations, United States Immigration and Customs Enforcement ("ICE"); United States Department of Homeland Security ("DHS"); ICE; and Bruce Scott, Warden of the Northwest ICE Processing Center

[1] As used elsewhere in this Order, "Respondents" does not include Respondent Scott, who has not appeared in this matter.

("NWIPC").

Petitioner, who has been detained at the NWIPC since August 5, 2026, seeks: (1) his immediate release; and (2) an order enjoining Respondents from placing an electronic GPS device on Petitioner's person or re-detaining him without first providing notice and a hearing before a neutral decisionmaker. Dkt. No. 1 ¶¶ 6, 46. Having reviewed the petition, Respondents' return (Dkt. No. 4), Petitioner's traverse (Dkt. No. 7), and the relevant record, the Court GRANTS the petition.

## I. Background

Petitioner is a citizen of El Salvador, a country he fled due to threats and attempts on his life, the murder of his wife and mother, and to be reunited with his minor son who lives in Seattle. Dkt. No. 1-2 (Araniva Almendares Decl.) ¶¶ 1, 4. On March 9, 2023, Petitioner entered the United States near Hidalgo, Texas. Dkt. No. 1-2 ¶ 2. That day, Petitioner had an appointment to present himself at the border to seek asylum through the CBP One Program. *Id.* Upon contact with Customs and Border Patrol ("CBP") officers, Petitioner was given a Notice to Appear ("NTA") and was paroled into the United States until March 7, 2024. Dkt. No. 6-1 (NTA) at 2; Dkt. No. 6-2 (Form I-94) at 2.

Petitioner appeared for appointments at the Seattle ICE office on the following dates: March 30, 2023; March 13, 2024; October 14, 2024[2]; October 15, 2024; October 15, 2025; December 4, 2025; May 5, 2026; and August 5, 2026. Dkt. No. 1-2 ¶¶ 5, 8, 10, 13, 14. During Petitioner's extended record of attending ICE check-in appointments, he also appeared for an initial Master Calendar Hearing on September 24, 2024, and that same year applied for asylum and a work permit. *Id.* ¶¶ 6, 9. His application for a work permit was granted and is valid until

---

[2] Although Petitioner was told to report on October 14, 2024, when he arrived, he was told the office was closed and instructed to return the next day.

2028. *Id.* ¶ 6. Prior to his re-detention, he worked as a project manager for a construction company. *Id.* ¶ 7.

On June 1, 2025, Petitioner was arrested for Driving Under the Influence ("DUI"). *Id.* ¶ 11. On April 14, 2026, the DUI charge was amended downward and Petitioner pleaded guilty to Reckless Driving. *Id.* Petitioner has no other criminal history. *Id.* ¶ 12. Following his arrest, Petitioner attended three check-in appointments with ICE. *Id.* ¶ 13. During these appointments, ICE officers did not mention the arrest. *Id.* But at Petitioner's August 5, 2026, appointment, ICE officers told Petitioner he was being detained for "having had contact with the police." *Id.* ¶ 14. That same day, Petitioner was served with an immigration warrant for his arrest (Dkt. No. 6-4), a notice of custody determination (Dkt. No. 6-5), and a cancellation of Form I-220A (Dkt. No. 6-6). Petitioner was transferred to the NWIPC, where he has remained to this day.

On September 21, 2026, Petitioner filed the instant petition. Dkt. No. 1. The matter is now fully briefed and ripe for the Court's review.

## II. Legal Standard

### A. Habeas Corpus Legal Standard

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). Habeas petitioners must prove by a preponderance of the evidence that they are entitled to relief, *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004)—that is, that they are "in custody in violation of the Constitution or laws or treaties of the United States," 28 U.S.C. § 2241(c).

### B. Injunctive Relief Legal Standard

A petitioner "seeking a permanent injunction . . . must demonstrate: (1) that he has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between

the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Factors three and four of the *eBay* analysis merge when the Government is the party opposing injunctive relief. *Nken v. Holder*, 556 U.S. 418, 435 (2009). The Ninth Circuit has held that a permanent injunction is appropriate where the party requesting it can demonstrate it is likely to suffer irreparable injury. *See City & County of San Francisco v. Trump*, 897 F.3d 1225, 1243 (9th Cir. 2018) ("An injunction is appropriate when the party seeking relief demonstrates that . . . it is likely to suffer irreparable injury that cannot be redressed by an award of damages[.]").

## III. Discussion

Petitioner challenges his re-detention as unlawful, arguing that Respondents violated his due process rights by re-detaining him without notice and a pre-deprivation hearing. Dkt. No. 1 ¶ 57. The Court addresses Petitioner's claim below, but first determines the statutory authority under which Petitioner is detained.

### A. Statutory Authority for Petitioner's Detention

As a preliminary matter, the Court must identify the detention authority under which Petitioner is detained. Respondents argue that Petitioner is detained under 8 U.S.C. § 1225(b), because he was released on parole. Dkt. No. 4 at 3. In response, Petitioner points out that the record submitted by Respondents shows that at the time of Petitioner's re-detention, he was viewed by immigration authorities as being detained under 8 U.S.C. § 1226(a). Dkt. No. 7 at 2. The Court finds Petitioner's argument more persuasive.

Although it is true that the record reflects that, upon arrival, Petitioner was paroled into the United States as an "arriving alien" (Dkt. No. 6-1 at 2), every one of his re-detention documents reflects otherwise. For example, Petitioner's Form I-213 states that on August 5,

2026, Petitioner "reported in accordance with the requirements of his Order of Release on Recognizance." Dkt. No. 6-3 at 4. The immigration warrant for Petitioner's re-detention states that it is authorized, in part, under section 236 of the Immigration and Nationality Act ("INA"), which is codified at 8 U.S.C. § 1226. *See* Dkt. No. 6-4 at 2. Petitioner's notice of custody determination, also issued on the date of re-detention, states the same, stating that Petitioner was detained "[p]ursuant to the authority contained in section 236 of the Immigration and Nationality Act[.]" Dkt. No. 6-5 at 2. Last, the memo canceling Form I-220A that was given to Petitioner on the date of re-detention states, "This memo is to document that ICE cancelled [*sic*] the most current Order of Release on Recognizance[.]" Dkt. No. 6-6 at 2.

Respondents address these documents by providing a declaration from deportation officer Andre Ouk. Dkt. No. 5 (Ouk Decl.). In his declaration, Officer Ouk states that "there is no indication in ICE records that Petitioner was ever released on Form I-220A. This appears to have been a mistake." *Id.* ¶ 7. But as Petitioner points out in response to Respondents' claim of a mistake (Dkt. No. 7 at 3), Officer Ouk does not have personal knowledge of the exhibits presented by Respondents, as he makes no claim to having been involved with the creation of these documents, and instead asserts only that he gathered information on Petitioner from his review of "systems and records" as well as a vague assertion that he is "familiar[]" with Petitioner's case (*see* Dkt. No. 7 at 7; Dkt. No. 5 ¶ 2). Nor does Officer Ouk's assertion that it "appears" to have been a mistake inspire much confidence from the Court. None of the re-detention documents shows any involvement by Officer Ouk, and Respondents have not provided any declarations from the officers who were involved that explains why four separate re-detention documents are a "mistake." Instead, Respondents asks the Court to simply ignore the documents and take the word of an officer without personal knowledge of the circumstances

underlying the documents and an individual who cannot assert the facts with any certainty. The Court declines the invitation to do so.

Finally, if Petitioner were truly subject to mandatory detention under Section 1225(b) Respondents could have never released him on an OREC under Section 1226. *See Jennings v. Rodriguez,* 583 U.S. 281, 283 (2018) (beyond humanitarian parole under 8 U.S.C. § 1182(d)(5)(A), "there are no other circumstances under which [noncitizens] detained under § 1225(b) may be released"). Yet Respondents completely ignore this contradiction.

Accordingly, the Court is unconvinced by Respondents' argument that Section 1225(b)(2) now applies, given that this claim is rebutted by DHS's own decision making. *See, e.g.*, *Ahmad v. Mullin*, No. C26-2194, 2026 WL 2689820, at *2 (W.D. Wash. Sept. 14, 2026) ("Where petitioner is 'treated by Respondents as subject to detention under § 1226, rather than mandatory detention under § 1225,' the former is more likely to apply." (citation modified) (quoting *Del Valle Castillo v. Wamsley*, No. C25-2054, 2025 WL 3524932, at *5 (W.D. Wash. Nov. 26, 2025))); *Quintanilla v. Hernandez*, No. C26-1629, 2026 WL 1827541, at *3 (W.D. Wash. June 25, 2026) (concluding that noncitizen was detained under 8 U.S.C. § 1225(a) due to ICE's past classification of him). Therefore, the Court concludes that Petitioner is detained under 8 U.S.C. § 1226(a), and his detention is not mandatory.

**B. Constitutionality of Petitioner's Re-Detention**

The Due Process Clause prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. The right to due process extends to "all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)); *see also P.T. v. Hermosillo,* No. C25-2249, 2025 WL 3294988, at *2 n.1 (W.D. Wash. Nov. 26, 2025) ("In determining the lawfulness of Petitioner's detention, the Court will focus not on the Government's claimed authority to detain, but the process by which Petitioner was detained.")).

In *Mathews*, the Supreme Court established a three-part balancing test determining whether an administrative procedure provides the process constitutionally due:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335.

District courts in this Circuit have applied the *Mathews* test in similar circumstances since then. *See, e.g.*, *Fuentes Pabon v. Hernandez*, No. C26-2529, 2026 WL 2453610, at *4 (W.D. Wash. Aug. 21, 2026) (collecting cases).

Respondents concede that "if this Court should find that Petitioner was subject to an OREC like the petitioner in *Fuentes Pabon*, Federal Respondents acknowledge that this Court will likely find that Petitioner's re-detention was constitutionally deficient and order his immediate release." Dkt. No. 4 at 7. As such, Respondents address the *Mathews* factors, but do so only in the context of their belief that Petitioner's detention authority is under Section 1225. *Id*. Given the lack of argument from Respondents relevant to Section 1226, and in line with other

courts in this District, the Court finds that all three *Mathews* factors weigh in Petitioner's favor, as addressed below.

As to the first *Mathews* factor, Petitioner has a substantial inherent interest in retaining his freedom from bodily restraint. *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992). Moreover, Petitioner has relied on this liberty interest, as shown through applying for and receiving a work permit, working as a construction manager, applying for asylum, and providing for his minor son. *See* Dkt. No. 1-2 ¶¶ 3–4, 6–7. As to the second *Mathews* factor, courts have held that there is a high risk of erroneous deprivation where a noncitizen is detained without notice and either a pre-deprivation hearing or a prompt post-deprivation hearing; this Court agrees. *See, e.g.*, *Ortiz-Canales v. Blanche*, No. C27-48, 2026 WL 2561542, at *1 (W.D. Wash. Aug. 31, 2026) (finding re-detention without notice and opportunity to be heard posed risk of erroneous deprivation); *Tello Vazquez v. Mullin*, No. C26-2039, 2026 WL 1911507, at *2 (W.D. Wash. July 2, 2026) ("The absence of pre-deprivation procedural safeguards leads to a high risk of an erroneous deprivation of Petitioner's liberty."); *Geler v. Blanche*, No. C26-481, 2026 WL 1251660, at *6 (W.D. Wash. May 7, 2026) (finding high risk of erroneous deprivation where ICE revoked OREC with no process for petitioner to challenge revocation). Finally, the third *Mathews* factor also weighs in Petitioner's favor. Any government interest in enforcing immigration laws is "in fact served by the individualized determination by an immigration judge, based on a review of evidence presented by the government and the noncitizen, as to whether an individual is dangerous or at risk of fleeing removal proceedings, under existing, well-established procedures." *Geler*, 2026 WL 1251660, at *7 (quoting *Escobar Salgado v. Mattos*, No. C25-1872, 2025 WL 3205356, at *25 (D. Nev. Nov. 17, 2025)). Further, immigration bond hearings are routine, and any administrative costs to providing a pre-deprivation hearing are outweighed

by the risk of erroneous deprivation of the liberty interest at stake. *See K.G.M.Q. v. Bondi*, No. C26-506, 2026 WL 962609, at *7 (W.D. Wash. Apr. 9, 2026).

In sum, this Court finds that all three *Mathews* factors weigh in Petitioner's favor. Therefore, his re-detention without notice and an opportunity to be heard violated his rights under the Fifth Amendment to the United States Constitution. The Court finds that the remedy for such a violation is release. *See, e.g.*, *Hernandez Rangel v. Scott*, No. C26-3028, 2026 WL 3135562, at *6 (W.D. Wash. Oct. 20, 2026) (collecting cases).

**C. Injunctive Relief**

Petitioner meets the factors for injunctive relief. With respect to the first factor, "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). As to the second factor, Petitioner avers that, prior to his re-detention, he worked as a project manager for a construction company, took care of his minor son, and that his detention has caused emotional and financial hardship for him and his family. Dkt. No. 1-2 ¶¶ 7, 18, 20. Such facts satisfy the second factor. *See, e.g.*, *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017) (recognizing as irreparable harm the "economic burdens imposed on detainees and their families as a result of detention, and the collateral harms to children of detainees whose parents are detained"). Finally, as to the third and fourth factors, which merge when the Government is the party opposing the issuance of injunctive relief, *see Nken* 556 U.S. at 435, "it is 'always in the public interest to prevent the violation of a party's constitutional rights'" *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (quoting *Riley's Am. Heritage Farms v. Elsasser*, 32 F.4th 707, 731 (9th Cir. 2022)). What is more, in the immigration context, the Ninth Circuit has recognized that "[t]he costs to the public of immigration detention are 'staggering[.]'"

*Hernandez*, 872 F.3d at 996. Accordingly, the balance of hardships and public interest weigh in Petitioner's favor.

Petitioner has satisfied all four factors; therefore, the Court orders that Respondents shall not re-detain Petitioner without notice and a pre-deprivation hearing. Additionally, Petitioner argues that the injunction should apply to GPS monitoring as well, asserting that such a condition is a form of custody and that the proper remedy is returning him to the conditions he was on prior to his re-detention. *See* Dkt. No. 7 at 11–12 (citing *Kirykovich v. Hernandez*, No. C26-695, 2026 WL 890459, at *4 (W.D. Wash. Apr. 1, 2026) ("[As] the constitutional violation is the absence of pre-deprivation process, the proper remedy is to restore the status quo ante—that is, to return [the petitioner] to the conditions that existed before his unlawful detention."); *Broche Perez v. Hernandez*, No. C26-3088, 2026 WL 2731579, at *5 (W.D. Wash. Sept. 16, 2026) (prohibiting Respondents from "imposing additional restrictions" without notice and a hearing); *Diallo v. Scott*, No. C26-975, 2026 WL 1843102, at *4 (W.D. Wash. June 26, 2026) (subjecting a petitioner to an ankle monitor following his release rendered him still in Respondents' custody)). The Court finds Petitioner's argument and authority convincing and orders that Respondents shall not put Petitioner on GPS monitoring absent notice and a pre-deprivation hearing.[3]

As a final note, Respondents request in a footnote, without any analysis, that if the Court grants injunctive relief, the notice and pre-deprivation requirement not apply if Petitioner's detention authority becomes mandatory, pursuant to 8 U.S.C. §§ 1226(c) or 1231(a)(2). Dkt.

[3] Petitioner requests in his traverse that the Court's order should "require the government to justify re-detention or the imposition of more restrictive conditions by clear and convincing evidence, and to demonstrate that alternatives to detention are inadequate." Dkt. No. 7 at 12. As a general rule, facts or arguments must be contained in the moving papers and may not be raised for the first time in a reply brief. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) (citing *Koerner v. Grigas*, 328 F.3d 1039, 1048 (9th Cir. 2003) (affirming where district court declined to consider an argument raised for the first time in reply)). Therefore, the Court declines to address such a request.

No. 4 at 10 n.7. Petitioner does not reply to this request in his traverse. The Court orders that, if Petitioner's detention authority become mandatory, any re-detention must comport with due process, as well as the applicable statute or regulation.

## IV. Conclusion

Accordingly, Petitioners' petition for writ of habeas corpus (Dkt. No. 1) is GRANTED. It is hereby ORDERED:

(1) Respondents and all their officers, agents, employees, attorneys, and persons acting on their behalf or in concert with them:

(a) SHALL release Petitioners from detention **within twenty-four (24) hours** under the terms no more restrictive than those in place prior to Petitioner's re-detention;

(b) SHALL submit to the Court, **within forty-eight (48) hours** of Petitioners' release from detention, a declaration or status report confirming that Petitioners have been released from custody and informing the Court of the date and time of their release;

(2) Respondents and all their officers, agents, employees, attorneys, and persons acting on their behalf or in concert with them SHALL NOT re-detain Petitioner, without proper notice and a pre-detention hearing, unless Petitioner's detention becomes mandatory, in which case, any re-detention must comport with due process and the applicable statute or regulation;

(3) Respondents SHALL return to Petitioners any personal property, including any personal identification document (other than a passport);

//

//

(4) Any motion requesting fees should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

Dated this 29th day of October, 2026.

Tana Lin
United States District Judge